Otis Lee FUSON, Petitioner-Appellee,

v.

A.R. JAGO, Respondent-Appellant.

No. 84-3403.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 17, 1985.

Decided Sept. 11, 1985.

Brenda Lang, Asst. Atty. Gen., Columbus, Ohio, Richard David Drake, argued, for respondent-appellant.

Otis Lee Fuson, Cincinnati, Ohio, James W. VanDeilen (CJA) argued, Toledo, Ohio, for petitioner-appellee.

Before KEITH, MERRITT and JONES, Circuit Judges.

KEITH, Circuit Judge.

The Respondent-Appellant, A.R. Jago, acting on behalf of the State of Ohio as the Superintendent of the London Correction Institution, appeals a district court order granting a writ of habeas corpus to the Petitioner-Appellee, Otis Lee Fuson, Jr. The petitioner is presently in the custody of the respondent serving a four to twenty-five year prison sentence he received pursuant to a conviction on one count of aggravated burglary in violation of O.R.C. § 2911.11.

Upon consideration of the petitioner's petition for writ of habeas corpus, the United States District Court for the Southern District of Ohio concluded that the admission of a deceased codefendant's oral statement, which incriminated himself and the petitioner and which was made without oath during post-arrest, custodial interrogation, violated the petitioner's sixth amendment right to confrontation. We conclude the district court judgment granting the writ should be affirmed for the reasons set forth below.

## FACTS

William Cook testified at the petitioner's jury trial that on December 12, 1981 he observed the petitioner hoist the deceased codefendant, Gary Martin, onto a neighbor's second floor balcony. After Martin inspected the premises, he jumped to the ground and the two men walked away. A few minutes later the petitioner and Martin returned. The petitioner again boosted Martin up to the balcony. As Martin broke the latch on the balcony door and entered the apartment, the petitioner ran around to the side of the apartment building. Shortly thereafter, Martin emerged through the balcony door carrying a tire iron or crowbar which he threw to the ground before jumping down.

Cook testified that after observing these activities he summoned a security guard and then canvassed the apartment complex in search of the defendants. As Cook returned to his driveway, he recognized the petitioner and Martin from their clothing as they coasted up to him in a car. The defendants looked at Cook for ten seconds and then Martin drove the car out of the apartment complex. Cook reported to police the license number of the car and described the defendants, their activities and the car, a green Gremlin.

An hour later, police officer Jerry Lee spotted such a vehicle, pulled it over and, with the aid of three other patrol cars, apprehended the petitioner and Martin in what was later established as Martin's car. The police search of the car yielded, among several items, a tire iron. Martin and the petitioner were subsequently arrested.

At the police station, Officer Gary Watson advised the petitioner of his constitutional rights and conducted a search of the petitioner's belongings. The officer testified that he found in the petitioner's wallet a piece of paper with the name "Dave" and a telephone number belonging to Dave Scheyer, the resident of the burglarized apartment. Upon questioning, the petitioner denied knowing Scheyer and denied that the slip of paper had been found in his wallet. Officer Watson testified that upon further questioning, the petitioner also denied knowledge of the burglary or ever being at the sight of the crime.

Officer Lee testified at trial that he advised the defendants of their rights prior to questioning them together at the police station. The officer testified that he was surprised when in response to his question about the use of a crowbar to open the balcony door, Martin replied that he had used the tire iron found in his car by the police. Officer Lee, at this point addressing questions to both defendants, asked if both of them had entered the apartment. Martin answered that only he had entered the apartment but that the petitioner had helped him get onto the balcony. Officer Lee asked, "then you both were breaking in"; Martin replied, "yes". The petitioner volunteered no response to this query except to shrug his shoulders.

Prior to trial, codefendant Gary Martin committed suicide. Thereafter, counsel for

the petitioner filed a motion in limine requesting the trial court to bar the prosecution from introducing evidence of Martin's confession at trial. After a hearing held March 4, 1982, the trial court overruled the petitioner's motion in limine on the ground that Martin's statements were admissible under Ohio Rule of Evidence 801(D)(2)(e) providing for the admission of a co-conspirator's statements made in furtherance of the conspiracy.

At trial, the defense presented three alibi witnesses. Becky Magnuson, a housemate of the defendant, testified that on the day of the burglary, the petitioner had returned home from work sometime between 12:00 and 12:30 p.m. and that he remained at home with her family until he was picked up by Gary Martin between 4:15 and 4:30 p.m. Ms. Magnuson testified that she did not hear from him again until later that evening, when he called from the police station. On cross-examination, she admitted that she had not told police of the petitioner's whereabouts that afternoon, but had discussed it with defense counsel the day before trial.

Rhonda Earls, Becky Magnuson's sister and the petitioner's girlfriend, also testified that the petitioner had come home from work between 12:00 and 12:30 p.m. and was at home with her all afternoon until Gary Martin picked him up at 4:30 p.m.

Dorothy Wessler, mother of Earls and Magnuson and resident manager of the apartment where the petitioner roomed, testified that when she awoke at 2:00 p.m. on the afternoon of December 12th, the petitioner was home at that time. Wessler stated that he stayed at the apartment until Gary Martin picked him up later that afternoon. The jury subsequently returned a verdict of guilty on one count of aggravated burglary, and the court sentenced the petitioner to a four to twenty-five year term of imprisonment.

The petitioner appealed his conviction to the Ohio Court of Appeals on the ground that the admission of hearsay testimony about Martin's incriminating statements violated the petitioner's sixth amendment right to confrontation. The Ohio Court of Appeals affirmed the conviction, ruling that Officer Lee's testimony about Martin's confession was admissible hearsay as a statement against penal interest under Ohio Rule of Evidence 804(B)(3). The court further concluded that it was not required to address the sixth amendment violation alleged by the petitioner since any error in the admission of Officer Lee's testimony was harmless in light of other overwhelming evidence submitted against the petitioner.

The petitioner thereafter filed in the Supreme Court of Ohio a memorandum in support of jurisdiction alleging the same sixth amendment violation. In a memorandum in opposition to jurisdiction, the state argued that the Supreme Court should decline review of the petitioner's claim on three grounds: (1) Officer Lee's hearsay testimony was admissible under Ohio Rule of Evidence 804(B)(3) because Martin's statements were against penal interest; (2) the testimony was admissible under Ohio Rule of Evidence 801(D)(2)(b) because the petitioner effectively adopted Martin's confession; and (3) any error from admitting testimony about Martin's confession was harmless beyond a reasonable doubt. On June 8, 1983, the Ohio Supreme Court denied the petitioner leave to appeal from the Ohio Court of Appeals judgment affirming his conviction.

On December 20, 1983, the petitioner filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Ohio again alleging that the admission of hearsay testimony about Martin's confession violated his right to confrontation. The district court found that Officer Lee's hearsay testimony did not fall within an established exception to the hearsay rule; that the petitioner did not adopt Martin's statements by shrugging his shoulders when asked to confirm them; and that the circumstances of Martin's confession carried no particularized guarantees of trustworthiness and were in several respects inherently unreliable. The court concluded that in light of the alibi

witness testimony presented at trial, admission of Officer Lee's testimony was not harmless error beyond a reasonable doubt. The district court granted Fuson's petition for writ of habeas corpus on April 16, 1984.

## DISCUSSION

The sixth amendment's confrontation clause [1] does not preclude the admission of all out of court statements. *Mattox v. United States*, 156 U.S. 237, 242–44, 155 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895); *United States v. Licavoli*, 725 F.2d 1040, 1049 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984). The legitimate use of hearsay testimony when the declarant is not present for cross-examination requires a showing that the declarant is unavailable and that his statements bear adequate "indicia of reliability". *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Stevens v. Bordenkircher*, 746 F.2d 342, 347 (6th Cir.1984); *United States v. Licavoli*, 725 F.2d at 1049. If the hearsay testimony falls within an established hearsay exception, its reliability can be inferred. *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. If, however, an established exception to the hearsay rule does not apply, "the [hearsay testimony] must be excluded, at least absent a showing of particularized guarantees of trust worthiness." *Id.*

We note at the outset the well established rule that habeas review does not ordinarily extend to state court rulings on the admissibility of evidence. *Burgett v. Texas*, 389 U.S. 109, 113–14, 88 S.Ct. 258, 260–62, 19 L.Ed.2d 319 (1967); *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 396, 78 L.Ed.2d 338 (1983); *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir.1976). However, where erroneous application of state law deprives a petitioner of fundamental constitutional guarantees, a federal court will inquire into the state ruling on habeas review. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871–72, 40 L.Ed.2d 431 (1974); *Walker v. Engle*, 703 F.2d at 962; *Bell v. Arn*, 536 F.2d at 125. We conclude that the erroneous admission of Officer Lee's testimony about codefendant Martin's confession violated the petitioner's sixth amendment right to confrontation.

### I.

### Hearsay Exceptions

Martin was clearly unavailable to testify at the petitioner's trial. As noted above, the inquiry focuses next upon the reliability of the deceased declarant's statements which may be inferred from an applicable hearsay exception.

### (a) Hearsay Exception for Co-Conspirator Statements Ohio Rule of Evidence 801(D)(2)(e)

The trial court admitted Officer Lee's hearsay testimony under Ohio Rule of Evidence 801(D)(2)(e) [2] which provides a hearsay exception for statements made by a co-conspirator during the course and in furtherance of the conspiracy. Although this rule states a hearsay exception which is also well established under the Federal Rules of Evidence, we must conclude that it does not apply to Martin's confession. Under the state and federal exceptions, upon a showing by independent evidence of a conspiracy among codefendants, out of court statements by one conspirator are admissible against the other conspirator if they are made during the course of and in furtherance of the conspiracy. *United States v.*

---

1. The Sixth Amendment provides: "In all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 1067–69, 13 L.Ed.2d 923 (1965).

2. Ohio Rule of Evidence 801(D)(2)(e), which parallels Rule 801(d)(2)(E) of the Federal Rules of Evidence, provides:

**(D) Statements which are not hearsay.** A statement is not hearsay if: ...
(2) *Admission by party-opponent.* The statement is offered against a party and is ...
(e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.
Ohio Rev.Code Ann.Ev.R. 801 (Page 1984).

*Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974); *United States v. McLernon,* 746 F.2d 1098, 1105 (6th Cir.1984); *State v. Shelton,* 51 Ohio St.2d 68, 72, 364 N.E.2d 1152, 1155 (1977). Martin's responses to Officer Lee's questions amounted to a custodial confession and can under no circumstances be construed as statements to the petitioner during the course of and in furtherance or concealment of their conspiracy to commit aggravated burglary. *See State v. Jones,* 22 Ohio App.2d 67, 69–70, 258 N.E.2d 258, 259–60 (1970).

### (b) Hearsay Exception for Statements Made Against Penal Interest

### Ohio Rule of Evidence 804(B)(3)

■ The Ohio Court of Appeals ruled that Martin's confession was admissible as a statement against penal interest under Ohio Rule of Evidence 804(B)(3) which provides:

> **(B) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> \*       \*       \*       \*       \*       \*
>
> (3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.[3]

Ohio Rev.Code Ann.Ev.R. 804 (Page 1984). Under Ohio law, this exception applies to out of court declarations by persons who are not parties to the action and includes statements which subject the non-party de-

clarant to criminal liability. Ohio Rev.Code Ann.Ev.R. 804, staff note, p. 411 (Page 1984). The rule requires that a statement tending to expose the non-party declarant to criminal liability, whether it is offered to exculpate or inculpate a defendant, "must be supported by 'corroborating circumstances' to 'clearly indicate the trustworthiness of the statement.'" *Id.*

The state contends that Martin's confession falls within the ambit of Ohio Rule 804(B)(3) and otherwise bears indicia of reliability. We do not agree. As observed in the staff note for Ohio Rule 804(B)(3), "a statement (confession) admitting guilt and implicating another person in the same crime, and *made while in custody,* might well be motivated by a desire to curry favor with the authorities and, hence, fail to qualify as being against interest." Ohio Rev.Code Ann.Ev.R. 804, staff note, p. 411 (Page 1984) (emphasis in original). In a concurring opinion which addresses the application of Rule 804(B)(3) to statements implicating codefendants, Chief Justice Celebrezze reiterated the staff note observation:

> The question remains whether Mabry's confession falls within the hearsay exception of Evid.R. 804(B)(3). Appellant suggests that because Mabry's confession was a statement tending "to expose the declarant to criminal liability," the confession is admissible under this exception. I would agree that the portion of Mabry's confession in which he implicated himself would be admissible under this exception. However, any portion of Mabry's confession which implicated his co-defendants would not be a statement against Mabry's interest and, hence, would not be admissible under this exception. Thus, contrary to appellant's position, Mabry's confession, in its entirety, is not admissible under any recognized exception to the hearsay rule as

---

**3.** Ohio Rule of Evidence 804(B)(3) parallels its federal counterpart, Federal Rule of Evidence 804(b)(3). For a thorough discussion of the penal interest exception, see Tague, *Perils of the*

*Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception,* 69 Geo.L.J. 851 (1981).

embodied in this state's Rules of Evidence.

*State v. Young,* 5 Ohio St.3d 221, 227–28, 450 N.E.2d 1143, 1149 (1983) (emphasis in original).

■ Thus, we cannot, as urged by the state, conclude that Martin's statements clearly fall within the ambit of the hearsay exception established by Ohio Rule of Evidence 804(B)(3). Nor do we believe the conditions under which Martin made his confession "clearly indicate the trustworthiness of the statement" as required under the Rule. On the contrary, the credibility of a defendant's statement which incriminates a co-defendant and was made during post arrest, custodial interrogation in the presence of the co-defendant, "is inevitably suspect." *Bruton v. United States,* 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968). We, therefore, conclude that Martin's statement fails to satisfy any hearsay exception under the Ohio Rules of Evidence.

## II.

### Other Indicia of Reliability

### (a) Adoptive Admission

■ The state alternatively argues that under *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979) and *Poole v. Perini,* 659 F.2d 730 (6th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 450 (1982), the petitioner adopted Martin's confession by shrugging his shoulders when asked to confirm Martin's statements. We find no merit to this contention. In *Parker* the Supreme Court held that *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), does not require reversal of a defendant's conviction by joint trial when the defendant's confession "interlocks" with and supports the confession of a nontestifying co-defendant. 442 U.S. at 64, 99 S.Ct. at 2134. As the petitioner was tried alone and never made a confession, *Parker* is not applicable to this case. Moreover, we decline to find on this record that the petitioner's non-committal shrug constituted an adoption of Mar-

tin's statements to Officer Lee. As noted in *Poole v. Perini,* "a defendant cannot adopt an out-of-court statement as his own without some affirmative action on his part." 659 F.2d at 733. The petitioner did not verbally assent to Martin's statements and in fact strongly denied to police any involvement in the burglary. Nor would the petitioner be expected to refute Martin's statements after twice being advised of his right to remain silent. *United States v. Brinson,* 411 F.2d 1057, 1060 (6th Cir.1969).

### (b) Particularized Guarantees of Trustworthiness

■ As noted above, in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court acknowledged the inherently suspect trustworthiness of an unavailable codefendant's confession which implicates the other defendant. *Id.* at 136, 88 S.Ct. at 1628. In the confession at issue here, the declarant made no spontaneous utterance; his oral confession was made in response to custodial interrogation, without oath or support of a signed statement. Nor did the petitioner corroborate Martin's statements with a subsequent confession. We conclude that Martin's confession was not admissible under an exception to the rule against hearsay and did not otherwise afford adequate indicia of reliability. The admission of the confession, therefore, violated the petitioner's right to confrontation.

## III.

### Harmless Error Beyond A Reasonable Doubt

■ Error abrogating the petitioner's right to confrontation does not require reversal if the reviewing court can conclude that the error did not contribute to the conviction. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Mayes v. Sowders,* 621 F.2d 850, 856 (6th Cir.), *cert. denied,* 449 U.S. 922, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980). We find no error in the district court's

evaluation of the impact made by Martin's confession on the minds of the jurors. We agree with the district court that without the hearsay testimony of Martin's confession, the case against the petitioner becomes "significantly less persuasive". *See Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972). Without it, the case would have entailed a credibility determination of the petitioner's three alibi witnesses, and Mr. Cook's identification of the burglars initially by their clothing and subsequently from a line up. In our view, the deceased codefendant's statements would have had great impact on the jurors' evaluation of the case.

The judgment of the Honorable John D. Holschuh, United States District Court for the Southern District of Ohio, is hereby affirmed.

MERRITT, Circuit Judge, dissenting.

In this habeas corpus case collaterally attacking petitioner's Ohio burglary conviction, I do not agree with the Court that state court admission of deceased co-conspirator Martin's incriminating statement made in petitioner's presence violated the Confrontation Clause. By shrugging his shoulders rather than denying or disagreeing with confederate Martin's statement, petitioner adopted it in the sense that he said, in effect, "I do not contest what he said." Martin's statement is reliable because it expressly admits that both participated in the crime—and hence is a statement against Martin's penal interest—and because it was made in petitioner's presence. Surely such an uncontested statement incriminating both has sufficient reliability to meet the test of the Confrontation Clause. The Confrontation Clause requires state courts as well as federal, to observe basic principles of fairness in admitting hearsay testimony. I do not see any possibility of unfairness when a state court admits an incriminating statement of a deceased co-conspirator made directly in the presence of and acknowledged and not disputed by the defendant when the truth of the incriminating statement is fully and completely corroborated by other independent evidence.